Mr. Justice Noli
delivered the opinion of the court:
The rule of law, that hearsajr shall not be received as-evidence, is so well established, that it would be an imputation on any one, pretending to be conversant with law, to say that he did not know it. But if authority is wanting for so plain a proposition, it may be found in Phillips On Evidence, 173, and the authorities there quoted. To this rule, cases of pedigree, prescription and custom are exceptions. But it is not pretended that this case comes within those exceptions. It is however contended, that *232 as the witness himself could not be examined as to thgpoint in question, his declarations might be given in evidence. But it certainly does not follow, that merely because a person cannot be sworn, his declarations can be given in evidence. A person who is interested or infamous cannot be sworn as a witness, neither can his declarations be admitted. It would be extraordinary if a person’s declarations, not upon oath, should be evidence, whose oath would not be received. The first quslion which arises on this part of the case, is, could not the witness be compelled to answer the question ? Secondly, if he could not, might his declaration be -received ? To determine the first question, we must look to the object of the defendant in calling the witness. He had charged the plaintiff1 with keeping a whore-house, and if he could prove that all the women about the house were of that description, he would either establish the charge, or it would ’ go in mitigation of damages. He had given evidence of. the suspicious character of the wife. Ee had proved that one of her daughters had had an illegitimate childand thaMhis girl’s character had not escaped censure. This witness was called to establish the fact upon her. And to repel the charge of her general bad character, he was asked on his cross examination, if he had not been the cause of her seduction, by a promise of marriage. The pretence for not answering the question was, that if he answered in the affirmative, it might be given in evidence against him in an action for a breach of promise of marriage then depending against him. I will here put out of view the great contested question, whether a witness can be compelled to answer a question which may subject him to a civil action. I think 1 may venture to affirm, without any fear of contradiction, that he could not have been compelled t > answer the questions which were put to him on his direct examination. He could not be required to publish his own disgrace, by swearing to a criminal connection with this young woman ; and if he had refused to have been sworn, I,presume iris declarations to that effect *233 could-not liavc been given in evidence on .the part of the defendant, and yet, in that ease, he' would have had the same claim upon him that the plaintiff has now. Neither in that case will it be pretended, I presume, that the plaintiff could have had the benefit of the testimony which he now claims ; but if the witness chose to volunteer his services to fix a disgrace upon her, he ought to have been compelled to disclose all the circumstances connected with it, which went in any manner to remove the reproach. Suppose a person should be indicted for murder, and a witness should be called who could not give a correct account of the transaction without implicating himself? If he should make such an objection to his examination, the objection would be sustained.- (The State vs. Edwards, 2 Nott & McCord, 13.) But if he should prove the defendant’s confession of his guilt, or facts which went to establish it, he would be required to tell all the circumstances which would go to exculpate him, even thoi gh they might implicate himself. He would not be permitted to give a partial statement of the circumstances — he must tell the whole or none, and such, I think, should have been the course in this case.
But suppose the witness could not have been required to answer the question, does it follow that his declarations are evidence ? What are the reasons why hearsay is not received as evidence ? • Why first, because the person is not upon oath. Secondly, because the party against whom it is to operate has no opportunity to cross-examine. In the case of the State vs. Edwards, who was indicted for fighting a duel, the witnesses declined answering the questions put to them, because their answers would subject them to a prosecution ; but I presume their previous declarations could not have been substituted for the reasons already given, and the rules of evidence are the same in civil as in criminal cases. The rule of law that when the best evidence cannot be had, the next best may be reoeivedj must not be carried too far. Secondary evidence |nay be received, but not that which is incompetent.— *234 Thus for instance, if an original deed is lost, a cópjr may be given in evidence. If a copy cannot be had, extracts' from it may be received, and if extracts cannot be obtained, you may give parol evidence of its contents; but that is as far as the rule éan be extended. Hearsay,- or the declarations of a person of its contents cannot be admitted 3 and if a person cannot establish his case by competent testimony, he must fail. The declarations of a deceased person, even in extremis, (except in particular cases) aré not evidence, / ( Caison vs. Austin, 7 Johnson Rep. 95, Gamors vs. Barnard, 1 Anstruther, 299.) The circumstance of his not being able to prove it any other way will not authorize the introduction of incompetent testimony.It is however contended, in argument, that his declara-*tions might be given in evidence, in order to show that ha had contradicted himself, and thereby discredit him '; but that would only be permitting one error for the purpose' of supporting another. T0 permit an immaterial question to be asked, in order to draw from a witness an answer for the purpose of calling a witness to contradict it, is as much a violation of the rules of law as the admission of hearsay evidence itself. I am aware that there have been conflicting opinions on this subject, but I suppose we may still indulge the hope, that the law, like other sciences, is Still advancing towards perfection, and this point- seems now to be pretty well settled by modern adjudications. — - In Phillips On Evidence, 210, it is laid down, “ that a witness cannot be cross-examined to any fact, which, if -admitted, would be collateral and wholly irrelevant to the matter in issue, for the purpose of contradicting him by other evidence in case he should deny the fact, and in that manner to discredit his testimony. In the case of Spenceley vs. De Willott, (7 East, 108, J Lord Ellenborough said he had ruled the point again and again until he was tired of hearing it agitated, and he wished it might be carried up, that it might be fully put to rest. It was carried up, and the court were all decidedly of opinion that it was not competent for counsel, on cross-examination, to question- *235 a witness concerning a fact wholly irrelevant to the matter in issue, if answered affirmatively, for the purpose of discrediting him if he should answer in the negative, by calling another witness to disprove what he said. The same point was ruled in the case of Harris vs. Tippit, (2 Campbell, 637.) If he had said upon his oath that he had never made any such promise, I admit he might have been asked if he had never said so, and upon his denying it, a witness might have been called to show that he had contradicted himself; because then the question would have been relevant to the issue ; but whether he had said no or not, was irrelevant, because it was not evidence.
But suppose these authorities are not to be recognized as law, still I contend the testimony was inadmissible. Admit that a witness may be asked an immaterial question, merely with a view to call another to contradict and discredit him ; yet the question must be such as not to affect the rights, interests or characters of others. .Suppose the question had been put to the witness, whether he had not said he had had a criminal connexion with one of the most respectable women in the district, and he had answered in the negative, would the court have suffered a witness to be called to prove that he had said so ? Would it be permitted that the character of a respectable woman should be slandered and traduced for the purpose of shewing that a witness had sworn falsely. And is it not equally objectionable that the declaration of a witness, which is not, of itself,' com-? petent testimony, but which may nevertheless have an important influence on th.e case in litigation, should be received ? It is said, we do not know that it had any influence on thejury. I can only say, it was introduced avowedly for that purpose; it was-used in the argument for that purpose : And for that purpose, it was submitted to thejury under the whole weight and influence of the court, and whenever improper evidence has been permitted to go to thejury, it furnishes good ground for a new trial, unless we ean see that it could not have had any influence op the minds of the jury.
*236 In every point, of view, therefore, in which I have been able to consider the question, I think the declarations of this witness ought not to have been admitted ; it went in jny minc|, to violate one of the safest and best rules of evidence, and therefore furnishes a good ground for a new trial.
The next question relates to the amount of damages. The reluctance which this court has always expressed to interfere with the verdicts of juries would have induced me to pause a long time before I should have consented to grant a new trial on this ground alone. I am glad, therefore, that another has presented itself which enables me to do justice to my own feelings i,n granting a new trial, where I think the damages quite unauthorized by the circumstances of the case. Without resting my opinion singly on that ground, it appeared, in evidence, that the defendant’s son was visiting the plaintiff’s house, and was yery attentive to his step daughter. It also further appeared that the plaintiff permitted his visits against the ponsent of the defendant. That the plaintiff had exjaressed a wish that she should marry him, but that the defendant was opposed to the connection. There was also the testimony of several witnesses, that this young woman’s mother was of a suspicious character in regard to her virtue ; that her elder sister had had an illegitimate child, and that her own character had not entirely escaped censure. Under tho.se circumstances, the defendant had on one occasion, and one only, when under a strong excitejnent, smarting under the anguish of a fathers feelings for a son, who he thought was travelling the road to ruin, and under th.e encouragement of the plaintiff hjmself, said to him he had stolen his son from him, apd that he kept a Whore house. This statement of facts is controverted, because it is contended that the defendant’s witnesses were not entitled to credit; but I do not know why they were not. Their characters were not impeached. There was at least evidence enough to induce the defendant to wish his son to discontinue his visits. It is also said that the *237 young woman, to whom the defendant’s son was paying attention, was of good character until it was destroyed by his seductive promises. But that was one of the consequences which perhaps the defendant anticipated, and for the fear of which, he wished his son to discontinue his visits. The character of the mother was suspected. One daughter had already fallen, and the virtue of the other, as he rightly suspected, was not composed of the most impregnable materials ; for she afterwards became the victim of the same vice. If his son went there with honorable views, it was to form a connection which he disapproved, If he was actuated by improper motives, it was calculated to lead to disgrace and trouble which he wished him to avoid. Much has been said in the course of this argument, of this young man’s character ; but I do not think it at all material to the issue in this case.. If he had a good character, his father wished to preserve it; if not, he was equally the object of parental care and solicitude, and he wished to reclaim him. I do not mean to say that the defendant is tobe justified. Of that, the jury were the proper judges ; but surely some allowance is to be made for the feelings of a parent. If there is any case in which we ought to look with indulgence, on the weakness of human nature, it is in the partiality of a parent for a child, and on no occasion could we expect it to manifest itself more strongly, than when he was about to enter into an engagement which would fix his destiny for life. I think, if under such circumstances, he has in a transport of passion been betrayed into a hasty expression, it is not such a crime but it might be atoned for by a sum much less than five thousand dollars: If he had gone about cooly and deliberately, day after day, and week after week, circulating such a report through the country, his case would have been of a different complexion, but he has spoken the yvords but once, and then he addressed himself to the plaintiff. I think there is reason to believe that the conduct of the son has been identified with that of the father, and that by confounding two cases, distinct in their pa> *238 ture, the jury have been induced to give a verdict, which, perhaps their more deliberate judgment would not approve. It appears to me, therefore, a very proper case to go back to another jury.
Clarice, for the motion.
Pearson, contra.
The motion is granted.
Justice Johnson, concurred.